# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| **JUSTIN HARRISON BIRCH, individually and as personal representative of the Estate of VIRL LANE BIRCH, JOY FINLAYSON BIRCH, JUSTIN HARRISON BIRCH, JORDAN DOUGLASS BIRCH and COLTON BENNION BIRCH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**POLARIS INDUSTRIES INC.,**<br><br>**Defendant.** | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 2:13-cv-00633**<br><br>**United States District Court Judge Robert Shelby**<br><br>**Magistrate Judge Dustin Pead** |

On March 31, 2014, District Judge Robert J. Shelby referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) (doc. 33). Under that referral, Plaintiff Justin Harrison, individually and as the personal representative of the estate of Virl Lane Birch, Joy Finlayson Birch, Justin Harrison Birch, Jordan Douglass Birch and Colton Bennion Birch (collectively "Plaintiffs"), "Motion To Amend Complaint" (doc. 108) and "Motion For Rule 56(d) Extension" (doc. 119) are currently pending before this court.

Oral arguments were heard on March 5, 2015 (doc. 126). Attorneys Richard Denney and Lydia Barrett appeared telephonically on behalf of Plaintiffs, and attorney Ryan Nielsen appeared telephonically on behalf of Defendant Polaris Industries, Inc. ("Defendant"). At the conclusion of the hearing, the court issued its ruling denying both motions. This written ruling now follows.

## I.  BACKGROUND

Given the posture of the case, the court concludes that a recitation of the relevant procedural history is appropriate.

On July 3, 2013, Plaintiffs filed a Complaint and Jury Demand against Defendant in the United States District Court for the District of Utah (doc. 2).  The Court's Scheduling Order set December 15, 2013, as the deadline to amend pleadings and add parties to the case (doc. 25).

On March 20, 2014, the parties deposed non-party Skylar Damron ("Mr. Damron").  At his deposition, Mr. Damron testified that prior to the subject incident he replaced the 2011 Polaris RZR 800 cab frame with a cab frame purchased on Craigslist.com, an internet classified advertisement website (doc. 121-3).  Based thereon, on April 6, 2014, Defendant filed a "Notice of Non-Party At Fault," indicating that it believed Mr. Damron to be at fault and liable for negligently and improperly repairing, modifying and altering the subject 2011 Polaris RZR 800 (doc. 89-5).

On June 3, 2014, Plaintiffs filed "Rule 26(a)(2) Designation of Experts" (doc. 78) and served their expert reports on Defendant.  Under the Court's Amended Scheduling Order, fact discovery ended three days later on June 6, 2014 (doc.44).  On June 26, 2014, by mutual agreement, the parties disassembled the cab frame of the subject RZR.  Defendant filed its "Rule 26(a)(2) Designation of Experts" on July 7, 2014, and served its expert reports on Plaintiffs (doc. 83).

On September 11, 2014, Defendant deposed Plaintiffs' expert David Renfroe, Ph.D. (doc. 121-1).  At that time, Dr. Renfroe testified that he was aware from the "very get-go" that the subject 2011 RZR 800's cab frame "had been replaced" with a mismatched cab frame (*Id.* at 71:5-

2

14 ("it would have been October of 2013 when I found out about the replacement cab frame")).
On September 16, 2014, Plaintiffs filed a "Motion To Extend Fact Discovery Deadline" seeking
an order of the court extending fact discovery "for the limited purpose of exploring Polaris'
[dealer] training program" (doc. 84, p. 1).

On October 3, 2014, Defendant moved for summary judgment asserting that, due to the
replacement of the cab frame, Plaintiffs are unable to prove that a defect existed in the subject
2011 RZR 800 at the time it was sold by the Defendant (doc. 94).  To pursue a claim under Utah's
Product Liability Act, a plaintiff must prove that the product was defective at the time of sale by
the manufacturer.  *See* Utah Code Ann. § 78B-6-703(1).

On October 24, 2014, this court issued a Memorandum Decision and Order denying
Plaintiffs' motion to re-open and extend fact discovery (doc. 104).  Plaintiffs immediately filed an
objection (doc. 109).  On November 17, 2014, the District Court overruled Plaintiffs' objection
finding this court's Memorandum Decision and Order was "neither clearly erroneous nor contrary
to law" (doc. 114).

Shortly thereafter, on October 31, 2014, Plaintiffs filed their "Motion To Amend
Complaint" seeking leave to add a new claim and re-characterize the definition of the product at
issue (doc. 108).

Approximately three weeks after filing their motion to amend, on November 18, 2014,
Plaintiffs filed a "Motion For Rule 56(d) Extension" requesting that the District Court postpone
ruling on Defendant's motion for summary judgment in order to allow Plaintiffs additional time to
conduct discovery (doc. 119).

## II.  MOTION TO AMEND

Plaintiffs' motion seeks to amend the complaint by adding: (1) the allegation that the 2008 cab frame installed on the 2011 RZR 800 after Defendants purchased it was defective (doc. 108-1, ¶9);[1] and (2) a new claim against Defendant for "negligent training/evaluation" of the individual who installed the 2008 cab frame on the subject 2011 RZR 800 (doc. 108-1 ¶28(f), ¶52(f) and ¶64(f)).[2]  Plaintiffs characterize the proposed amendments as "housekeeping matter[s]" noting that the original complaint already contains references to "each and every component part" and the "unsafe roll cage/roll bar" (doc. 108, p. 2).  Further, Plaintiffs assert that the proposed amendments are timely since it was not until the June 26, 2014, joint inspection and disassembly that they discovered Mr. Damron had modified the forward couplings of the subject vehicle in order to accommodate the mismatched cab frame (doc. 108, p. 3).

Defendant counters that Plaintiffs were aware or should have been aware of the facts on

---

[1]Paragraph 9 of the proposed Amended Complaint states: "The subjects of this Complaint are (a) a 2011 Razor, Model Ranger RZR 800, VIN# 4XAVY76AXZBB075066 (the "Razor"), which was manufactured by Defendant POLARIS, and purchased by Decedent from an authorized Polaris dealer, Polaris Victory of St. George, located in St. George, Washington County, Utah, and (b) the 2008 model cab frame (aka "ROPS Structure"), also manufactured by Defendant POLARIS, which was purchased and installed by Polaris-certified mechanic Skyler Damron.  Every reference hereinafter to the Razor is intended to include the above mentioned 2008 model cab frame" (doc. 108-1, ¶9).

[2]Paragraphs 28(f), 52(f) and 64(f) of the proposed Amended Complaint seeks to include the following language: "At all times mentioned herein, Defendant POLARIS negligently and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, serviced, warranted, promoted, marketed, modified and advertised the Razor and each and every component part thereof, in that the Razor was capable of causing and in fact did cause, personal injuries to the user and consumer thereof, while being used in a manner reasonably foreseeable, thereby rendering the same unsafe.  The defects included, but are not limited to: (f) inadequate training and evaluation were provided to Polaris-certified service/repair mechanics resulting in, among other things, unsafe assembly methods and insufficient knowledge of aftermarket parts compatibility" (doc. 108-1, ¶28(f), ¶52(f), ¶64(f)).

which their proposed amendments are based since as early as October of 2013– the date Dr.

Renfroe found out about the replacement cab frame– and that Plaintiffs fail to provide any

legitimate reason for waiting eleven months after the December 16, 2013, cut-off date to seek an

amendment (doc. 117) (doc. 121); *See* Scheduling Order (doc. 25).

Generally, Federal Rule of Civil Procedure 15 governs motions to amend a complaint.  *See*

Fed. R. Civ. P. 15(a)(2).  Here, however, because Plaintiffs bring their motion after the

amendment deadline, the motion implicates not only Rule 15, but also Rule 16(b)(4), Rule

6(b)(1)(B) and this court's earlier decision denying Plaintiffs' prior attempt to amend the

scheduling order.  *See* Fed. R. Civ. P. 15, Fed. R. Civ. P. 16(b)(4), Fed. R. Civ. P. 6(b)(1)(B) (doc.

104).

As set forth below, the Court addresses the standards of review associated with Federal

Rules 15, 16 and 6, this court's October 24, 2014, Memorandum Decision and Order and the

interaction between the rules in the context of Plaintiffs' pending motions.

**A.  Standards Of Review**

### Federal Rule of Civil Procedure 15

Under Federal Rule of Civil Procedure 15, a party may amend its complaint once as a

matter of course within twenty-one (21) days after serving it and after that "only with the

opposing party's written consent or the court's leave.  The court should freely give leave when

justice so requires."  Fed. R. Civ. P. 15(a)(1) and (2).  Courts liberally interpret Rule 15 with the

understanding that "a plaintiff should not be prevented from pursing a valid claim," *Evans v.*

*McDonald's Corp.,* 936 F.2d 1087, 1090-91 (10th Cir. 1991), and litigants should be provided

with "'the maximum opportunity for each claim to be decided on its merits rather than on

5

procedural niceties.'" *Minter v. Prime Equipment Co.,* 451 F.3d 1196, 1208 (10th Cir. 2006)

(*quoting Hardin v. Manitowoc-Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

Motions to amend under Rule 15 are denied only upon "a showing of undue delay, undue

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment." *Frank v. U.S. West Inc.,* 3 F.3d 1357,

1365 (10th Cir. 1993); *accord Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222

(1962).

### Federal Rule of Civil Procedure 16(b)

Because the deadline to amend has passed, Plaintiffs' motion implicitly seeks not only to

amend the pleading pursuant to Rule 15, but also to amend the parties' scheduling order pursuant

to Rule 16(b).  *See* Fed. R. Civ. P. 16(b).  Under Rule 16(b) the court is required to limit the time

for amendment of pleadings and limitations shall only be "modified for good cause and with the

judge's consent." *Id*.  In order to demonstrate good cause, the moving party is required "to show

that it has been diligent in attempting to meet the deadlines, which means it must provide an

adequate explanation for delay.'" *Strope v. Collins,* 315 Fed. App'x 57, 61 (10th Cir. 2009); *see

also Pumpco, Inc. v. Schenker Intern., Inc.,* 204 F.R.D. 667, 668 (D. Colo. 2001).  "If [the

movant] was not diligent, the inquiry should end" and the motion should be denied.  *Johnson v.

Mamoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992).

### Federal Rule of Civil Procedure 6(b)(1)(B)

Under Federal Rule of Civil Procedure 6(b)(1)(B) the court may, for good cause, extend a

time frame "on motion made after the time has expired if the party failed to act because of

excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).

A finding of excusable neglect "requires both a demonstration of good faith by [movant] and it must also appear that there was a reasonable basis for not complying with the specified period." *Four Seasons Secs. Laws Litig. v. Bank of Am.,* 493 F.2d 1288, 1290 (10th Cir. 1974) (*citing* 4 Charles A. Wright & Arthur E. Miller, *Federal Practice and Procedure* § 1165 (1969)). Factors relevant to a finding of excusable neglect include "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 123 L.Ed. 2d 74, 113 S. Ct. 1489 (1993). A party's control over the delay is "the most important single . . . factor. . . in determining whether neglect is excusable." *City of Chanute v. Williams Nat. Gas Co.,* 31 F.3d 1041, 1046 (10th Cir. 1994) (citations omitted).

## October 24, 2014, Memorandum Decision And Order

On September 16, 2014, Plaintiffs filed their "Motion To Extend Fact Discovery Deadline" for "the limited purpose of exploring Polaris' training program" (doc. 84). After consideration, this Court issued a Memorandum Decision and Order denying the motion and concluding that Plaintiffs failed to establish good cause and diligence in waiting five months after receiving Defendant's "Notice of Non-Party Fault" and three months after the close of fact discovery to seek an extension (doc. 104).[3] Plaintiffs' objection to the Memorandum Decision

---

[3] The parties did not explicitly address Rule 6(b)(1)(B)'s excusable neglect standard in their briefing on Plaintiffs' "Motion To Extend Fact Discovery Deadline" (doc. 84). The court, however, addressed excusable neglect in the context of its good cause analysis, concluding that Plaintiffs failed to provide any legitimate explanation for their delay in moving for an extension of the deadline. *See Stringfield v. Brown,* 1997 U.S. App. LEXIS 433 *4-5 (10th Cir. Okla. Jan. 10, 1997) (unpublished) (*citing, City of Chanute* at 31 F.3d 1046 (10th Cir. 1994) (citations omitted)); s*ee also Sweetwater Investors, LLC v. Sweetwater Apartments Loan, LLC,* 2011 U.S.

and Order was denied by the District Court on November 11, 2014 (doc. 114).

<u>**Interaction Between Federal Rules 15, 16 and 6**</u>

The relationship between the "excusable neglect" standard of Rule 6 and the "good cause" standard of Rule 16 is imprecise. Some courts have determined that "a party moving to amend a pleading after a scheduling order deadline has passed must support the motion by demonstrating both excusable neglect and good cause." *Weil v. CarCore Nat'l., LLC,* 2011 U.S. Dist. LEXIS 55042 *5 (D. Colo. May 19, 2011) (unpublished); *see also Johnson v. City of Murray*, 2012 WL 5194025 (D. Utah Oct. 19, 2012) (unpublished) 2:10-cv-01130–TS; *American Nat'l. Property and Cas. Co. v. Uscier,* 2010 U.S. Dist. LEXIS 81633 *1 (D. Colo. July 14, 2010) (unpublished). Under similar circumstances other courts have declined to apply excusable neglect and only applied Rule 16's good cause standard. *See Buckles Mgmt. LLC., v. InvestorDigs LLC,* 728 F. Supp. 2d 1145 (D. Colo. 2010). In yet another context, courts have conflated the two standards finding them difficult to distinguish. *See Sweetwater Investors,* 2011 U.S. Dist. LEXIS at 44864 *6 n. 2 (M.D. Ala. Apr. 25, 2011) (unpublished).

Regarding the interaction between Rules 15 and 16, the Tenth Circuit "has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders." *U.S. ex. Re. Ritchie v. Lockheed Martin Corp.,* 558 F.3d 1161, 1166 (10th Cir. 2009) (*citing Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006)). Several courts have applied a two-step analysis when considering motions to amend filed after expiration of the amendment deadline. *See Colorado Visionary*

---

Dist. LEXIS 44864 *6 n.2 (M.D. Ala. Apr. 25, 2011) ("[t]he practical difference between the good cause and excusable neglect requirements is difficult to discern . . . .").

*Academy v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (*citing Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.,* 986 F. Supp. 959 (D.S.C. 1997), *aff'd,* 129 F.3d 116 (4th Cir. 1997)).  In those cases, if the movant cannot show good cause, then the motion is denied; if the movant can show good cause, the courts move to step two and apply the Rule 15(a) standard.  *Id.* at 687.  Under this two step analysis, "Rule 16(b)'s 'good cause' standard is much different than the more lenient standard contained in Rule 15(a)."  *Id.  See* "Rule 15: A Survey and Some considerations for the Bench and Bar," 126 F.R.D. 599, 604 (1989) ("Rule 16(b) erects a more stringent standard, requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court.") (citations omitted).

Upon review, this court determines that there is an overlap between the "excusable neglect" standard of Rule 6 and the "good cause" requirement of Rule 16.  To consider one the court must consider the other and a finding of excusable neglect under Rule 6 undoubtedly requires consideration of good cause under Rule 16.  *See Johnson v. City of Murray,* (D. Utah Oct. 19, 2012) (unpublished) ("Rule 6 itself embodies a good cause requirement").[4]  Given this overlap, the court applies a two step analysis and considers, as an initial matter, whether Plaintiffs can establish excusable neglect and good cause for their delay in seeking amendment after expiration of the amendment deadline.  *See* Fed. R. Civ. P. 6(b)(1)(b); Fed. R. Civ. P. 16(b)(4).  If the court finds excusable neglect and good cause, it will then consider whether to allow amendment  pursuant to Rule 15(a).  Fed. R. Civ. P. 15(a).

---

[4]While there appears to be a lack of clarity on the analysis applicable to motions to amend complaints filed after the amendment deadline has expired, this court declines to address any dissonance and limits its interpretation and analysis to the facts and circumstances of case before it.

9

**B. Discussion**

Plaintiffs seek two main amendments to the operative complaint.  First, Plaintiffs seek to include a new cause of action for negligent training and supervision of a Polaris certified mechanic.  Second, Plaintiffs seek to re-characterize the product at issue in order to include the 2008 cab frame modification.  In support of amendment, Plaintiffs argue that it was not until the June 26, 2014, disassembly date that the model year and material specifications[5] were discovered and therefore the complaint could not have been properly amended prior to disassembly (doc. 122).[6]

The court addresses each amendment in turn.

**<u>Amendment To Add New Claim For Negligent Training And Evaluation</u>**

On October 24, 2014, this court ruled that Plaintiffs could not establish "diligence in attempting to meet the [current] deadlines" and were therefore unable to provide good cause and excusable neglect for their delay in seeking amendment.  As a result, Plaintiffs' request for

---

[5]At oral argument, Plaintiffs explained that during the disassembly process they learned the make-up and grade of metal utilized in the subject vehicle and modification.  Defendant disagreed asserting that Plaintiffs were previously advised of the design specifications at issue.

[6]Plaintiffs' current focus on the model year of the cab frame as grounds for amendment illuminates the itinerant nature of their argument.  Previously, in connection with the motion to extend fact discovery, Plaintiffs argued that amendment was appropriate because they had only recently discovered that Defendant would "more likely focus its defense strategy on third-party negligence, alleging that Skyler Damron improperly repaired the subject ATV" (doc. 84, p. 2).  Thus, despite what Plaintiffs now characterize as the "unassailable" import of the June 26, 2014, disassembly and the discovery of the model year date, disassembly and information gleaned therefrom was not previously raised as "good cause" to support amendment of the discovery dates.  Instead, Plaintiffs raised the disassembly issue for the first time in their objection to the court's ruling (doc. 109), an omission acknowledged by the District Court in its denial of Plaintiffs' objection.  *See* District Court Order ("the Objection appears to improperly raise at least some issues outside the scope of the original briefing.") (doc.114).

additional time to conduct fact discovery was denied (doc. 104, p.4).  Consistent with that ruling, this court again concludes that "given the information provided to Plaintiffs on [the topic of Mr. Damron's alleged fault] through both Defendant's April 6, 2014, 'Notice of Non-Party at Fault' regarding Mr. Damron, and the May 1, 2014, deposition of Defendant's corporate representative," Plaintiffs are unable to establish excusable neglect and good cause in failing to move for amendment until October 31, 2015—eleven months after expiration of the amendment deadline (doc. 103, p.3).

For purposes of argument even assuming, as Plaintiff now contends, it was the June 26, 2014, disassembly that provided the information necessary to amend, Plaintiffs fail to adequately explain their dely in waiting four months after disassembly to file a formal motion for amendment.[7]

### Amendment To Include Cab Frame Modification

Next, Plaintiffs seek amendment to re-characterize the product at issue to incorporate the modified 2008 cab frame installed on the subject RZR by Skyler Damron.  Similar to their negligent supervision and training claim, the court finds that Plaintiffs fail to establish good cause and excusable neglect for their delay in seeking amendment after expiration of the amendment deadline.  Although Plaintiffs contend that it was not until the June 26, 2014, disassembly that they became fully advised of the model year and relevant material specifications, the Court

---

[7]At oral argument, Plaintiffs indicated for the first time that the parties four month delay was the result of numerous meet and confers with the Defendant.  Defendant disagreed and challenged Plaintiffs' claim that meet and confers, if any, had caused a delay.  Because the issue was raised for the first time at oral argument and neither party provided evidence to support their respective positions, the court only takes note of the general disagreement but places no weight on the explanations therefore.

concludes that Plaintiffs were aware, or should have been aware, of information sufficient to support amendment prior to the June 2014 date.  Specifically, such information includes, but is not limited to:  Plaintiffs' expert Dr. Renfroe's testimony that he had known the RZR cab frame was mismatched since October 2013 (doc. 121-1, Renfroe Dep. At 71:11-14), emails exchanged between Decedent and Mr. Damron dated June 29, 2011, June 30, 2011, and July 14, 2011, evidencing repairs and modifications to the subject RZR cab frame (doc. 121-2, BIR0006 and BIR0009), the joint deposition of Mr. Damron on March 20, 2014, at which time Mr. Damron indicated that he purchased the replacement cab from on Craigslist.com (doc. 121-3, Damron Dep. At 41:1-22), Defendant's April 6, 2014, 'Notice of Non-Party At Fault' where Defendant unambiguously states that it intends to place fault on Mr. Damron for his negligent and improper alteration and modification to the vehicle (doc. 38), and the May 1, 2015, deposition of Defendant's design engineer Aaron Deckard which included questioning on design differences between the various RZR model years.

In the face of this information, Plaintiffs provide no reasonable basis for waiting four months after the June 6, 2014, discovery deadline, eleven months after the December 16, 2013, pleading amendment deadline and after Defendant filed its motion for summary judgment to move for amendment of the pleadings.  Even assuming that the disassembly date triggered Plaintiffs' ability to amend, Plaintiffs give no adequate explanation for the four month delay between disassembly on June 26, 2014, and the filing of their motion to amend on October 31, 2014.

For these reasons, the court determines that Plaintiffs fail to establish excusable neglect and good cause to support their motion to amend after expiration of the amendment deadline.

**Amendment Pursuant To Rule 15**

Concluding that Plaintiffs are unable to establish excusable neglect and good cause to amend the scheduling order, the Court need not reach the issue of whether it should grant leave to amend pursuant to Rule 15. *See* Fed. R. Civ. P. 15(a); *see generally Colorado Visionary Acad. v. Medtronic, Inc*., 194 F.R.D. 684, 687-88 (D. Colo. 2000). If the court were to do so, however, it would deny Plaintiffs' motion for failure to meet Rule 15's amendment standard.

Courts in the Tenth Circuit refuse to amend pleadings based upon "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment." *Bylin v. Billings,* 568 F.3d 1224, 1229 (10th Cir. 2009). Untimeliness alone, even in the absence of prejudice to the nonmoving party may be "a sufficient reason to deny leave to amend" under Rule 15(a). *See Frank v. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993); *see also Cohen v. Longshore,* 621 F.3d 1311 (10th Cir. 2010); *Hom v. Squire,* 81 F.3d 969, 973 (10th Cir. 1996).

Of particular relevance is the court's "discretion to deny a motion to amend as untimely when the movant's delay is unexplained." *Birmingham v. Experian Info. Sys., Inc.,* 633 F.3d 1006, 1020-21 (10th Cir. 2011). *Compare Birmingham,* 633 F.3d 1029-21, *with Minter v Prime Equipment Co.,* 451 F.3d 1196, 1206 (10th Cir. 2006) (reversing a district court's decision disallowing an untimely amendment to complaint where movant was able to provide an adequate explanation for delay). A party has no adequate explanation for delay when they are "aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend" and failed to timely move to amend. *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987). Such is the case here. As set forth above, Plaintiffs were aware of the

13

facts on which their amendment was based for at least four months—and at most eleven months—prior to seeking amendment.  Plaintiffs fail to adequately explain their delay in moving to amend and this "unexplained delay alone justifies the district court's discretionary decision."  *Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir. 1994).

Accordingly, for the reasons now stated, Plaintiffs' Motion to Amend Complaint is hereby denied.

### III.  MOTION FOR RULE 56(d) EXTENSION

Pursuant to Rule 56(d), the court may allow for additional discovery when a party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  In the Tenth Circuit, a party seeking 56(d) relief, must provide an affidavit identifying "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment."  *Valley Forge Ins. Co. v. Health Care Mgmt, Ptnrs, LTD,* 616 F.d 1086, 1096 (10th Cir. 2010) (internal quotations and citations omitted).[8]   If, however, the party filing the Rule 56(d) affidavit "has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted."  *Jensen v. Redevelopment Agency,* 998 F.2d 1550, 1554 (10th Cir. 1993) (*citing, Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260, 1264 (10th Cir. 1984)).

Consistent with this court's October 24, 2014, ruling, Plaintiffs fail to establish good cause

---

[8]Plaintiffs have not filed an affidavit or declaration in conjunction with their Rule 56(d) motion.  Defendant filed an affidavit/declaration (doc. 121) in support of its opposition memorandum (doc. 120).

and excusable neglect in support of re-opening discovery.  Accordingly, for the reasons specifically set forth herein in connection with Plaintiffs' motion for amendment, Plaintiffs' Motion For 56(d) Extension is denied.

## IV.  RULING

For the reasons now stated and as set forth in the Court's ruling issued at the conclusion of oral argument,

1. Plaintiffs' "Motion To Amend Complaint" is hereby DENIED (doc. 108).

2. Plaintiffs' "Motion For 56(d) Extension" is DENIED (doc. 118).

DATED this 19th day of March, 2015.

_____
Dustin Pead
U.S. Federal Magistrate Judge